IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DAHLIA TREVINO COLUNGA | § | |
| | § | |
| v. | § | C.A. NO. C-12-303 |
| | § | |
| CAROLYN W. COLVIN[1] | § | |

**OPINION AND ORDER
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Dahlia Trevino Colunga brought this action on October 1, 2012, seeking review of the Commissioner's final decision that she is not disabled and, therefore, not entitled to Title XVI Supplemental Security Income Benefits. (D.E. 1). On March 1, 2013, Plaintiff and Defendant filed cross-motions for summary judgment. (D.E. 16; D.E. 18). Each party submitted a response in opposition. (D.E. 24; D.E. 26). For the reasons that follow, Plaintiff's motion is granted, Defendant's motion is denied, and this action is remanded.

**I. JURISDICTION**

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g). After consent by the parties, (D.E. 5; D.E. 21; D.E. 25), this case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 22); see also 28 U.S.C. § 636(c).

**II. BACKGROUND**

On December 23, 2009, at the age of forty-three, Plaintiff filed a claim with the Social Security Administration for Title XVI disability benefits, alleging a disability period beginning from January 1, 2002. Tr. 20, 128-32. She claimed disability for diabetes, high blood pressure,

---

[1] Effective February 14, 2013, Carolyn W. Colvin became Acting Commissioner of the Social Security Administration. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted as Defendant in this action.

high cholesterol, depression, and arthritis.  Tr. 20, 128-32.  Her claim was initially denied.  Tr. 20.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and one was held on March 17, 2011.  Id.  At the hearing, Plaintiff, two medical experts, and a vocational expert each testified.  Tr. 33-69, 72-75, 80-82.  On April 1, 2011, the ALJ issued a decision denying disability benefits.  Tr. 17-29.

The Social Security Administration denied Plaintiff's request to review the ALJ's decision on August 1, 2012.  Tr. 4-5.  She filed this action seeking to challenge the decision on October 1, 2012.  (D.E. 1).  On March 1, 2013, Plaintiff and Defendant filed cross-motions for summary judgment.  (D.E. 16; D.E. 18).  On March 25, 2013, they each submitted a response in opposition.  (D.E. 24; D.E. 26).

**A.      Plaintiff's Medical Records.**

Plaintiff was born on May 23, 1967 and has an eighth-grade education.  Tr. 28; Tr. 65.  She has no past relevant work.  Tr. 28.  She alleges disability based on diabetes, high blood pressure, high cholesterol, depression and arthritis.  Tr. 144.

Plaintiff was first seen by Dr. Ortiz-Garcia on February 24, 2009 for her diabetes, with which she had been diagnosed two years prior.  Tr. 194.  He noted that she had a medical history of diabetes, hypertension, and low back pain, and he diagnosed her with benign hypertension, diabetes, and morbid obesity.  Id.  He prescribed medications to treat her hypertension and diabetes.  Tr. 195, 197.

On November 23, 2009, Plaintiff received treatment from Corpus Christi Family Medicine.  Tr. 202.  The treatment notes indicate that, in addition to seeking follow up treatment for her hypertension and diabetes, she discussed her depression as well as a pain she felt in her right trigger finger.  Id.  The physician prescribed medication to treat her depression and referred

her to another doctor for further treatment. Id. He also treated her pain with an injection, and prescribed a medication to treat gastroesophageal reflux disease.[2] Id. He noted that Plaintiff's treatment and medications for hypertension and diabetes should be continued. Id. On December 15, 2009, Plaintiff had a follow-up appointment at which she complained of headaches, sinus pain, a stye in her right eye, hypertension, diabetes, and neck pain. Tr. 201. She was prescribed additional medications for these symptoms. Id. In a January 20, 2010 follow-up appointment at Corpus Christi Family Medicine, Plaintiff complained of dizziness, headaches, intermittent back pain, and worsening symptoms of depression. Tr. 227. Her medications were increased. Id.

On February 18, 2010, pursuant to her application for social security disability benefits, Dr. Rene Rodriguez conducted an internal medical consultation. She complained to Dr. Rodriguez about pain in her cervical spine as well as in her hands and feet. Tr. 209. She also indicated that she gets lonely, cries easily, and does not want to go out. Id. Dr. Rodriguez observed that Plaintiff "appears to be in no acute distress," but noted that there was tenderness along her spine and mild pain when rotating her head side to side. Tr. 210. He also noted that Plaintiff had a two-inch umbilical hernia, and that an x-ray revealed she suffered significant degenerative disc disease at L4-5 with minor degenerative changes elsewhere. Id. He concluded in his consultation that Plaintiff "was able to sit, stand and move about, [and that] [s]he could lift, carry and handle small objects." Tr. 211. In addition, he determined that her "strength is normal in upper and lower extremities," and observed that "[she] was able to walk on heels, toes, squat, hop and do tandem walking," although she had "some difficulty" because of her obesity. Id. At the time of the consultation, Plaintiff did not use an assistive device to ambulate. Id.

---

[2] Gastroesophageal reflux disease is the "reflux of the stomach and duodenal contents into the esophagus, which [] occur[s] ... as a chronic pathological condition." Dorland's Illustrated Medical Dictionary 1550 (29th ed. 2000).

Plaintiff received follow-up treatment at Corpus Christi Family Medicine throughout the spring of 2010, and, in a May 9, 2010 appointment it was noted that she had bunions on her feet and pain in her hands. Tr. 223. In addition, she complained that her knees had been giving out, causing her to fall, and that she felt dizzy. Id. Plaintiff was prescribed a cane based on these complaints. Id. On May 25, 2010, she complained of her continued back pain, arthritis in her hands, pain in her chest, and that she had problems balancing. Tr. 222.

On October 18, 2010, Plaintiff visited the Hector Garcia Clinic, where she was referred to a surgery clinic to treat her umbilical hernia. Tr. 322. On November 9, 2010, a CT scan of her abdomen confirmed the presence of a hernia. Tr. 292. She was scheduled for a hernia repair surgery on November 18, 2010, but it was canceled due to her high blood sugar levels. Tr. 270. On November 11, 2010, x-rays were taken of her knees, revealing no evidence of fracture or dislocation and no radiopaque retained foreign objects in the overlying soft tissues. Tr. 285-86.

On November 22, 2010, Plaintiff received follow-up treatment for her high blood sugar, and was prescribed an anxiety medication for her continuing anxiety and depression. Tr. 321. On December 27, 2010, she complained that the pain in her hands and feet was increasing due to the cold weather. Tr. 334. During a January 11, 2011 appointment, Plaintiff had no new complaints and the physician noted that her ongoing conditions, including type II diabetes, arthritis, hypertension, and obesity, remained stable. Tr. 333.

**B.    The March 17, 2011 Administrative Hearing.**

On March 17, 2011, ALJ Gary L. Vanderhoof held a hearing on Plaintiff's disability claim. Tr. 35. Plaintiff was represented by an attorney, Kathleen Day. Id. Two medical experts, Dr. George Decherd and Dr. Sharon Rogers, testified. Id. In addition, a vocational expert, Donna Johnson, testified. Id.

Dr. Decherd testified that based on his review of Plaintiff's medical records, she did not have an impairment or a combination of impairments that meet or equal any of the listed impairments. Tr. 42. He indicated that he agreed with Plaintiff's physicians' diagnoses that she suffered from uncontrolled type II diabetes, uncontrolled hypertension, morbid obesity, an umbilical hernia, depression, and degenerative disc disease in L4 and L5. Tr. 43. Dr. Decherd went on to opine that from a physical perspective–not taking into account any psychological limitations–Plaintiff was able to lift twenty pound objects and carry ten pound objects. Id. In addition, over the course of an eight-hour work day, she had no limitation on sitting and could stand for six hours, perhaps requiring the option to alternate sitting and standing. Id. However, Dr. Decherd testified that she should be precluded from ladders, scaffolds, and dangerous heights. Id.

Dr. Rogers testified that her review of Plaintiff's medical records suggested that she did not meet any of the listings of impairments. Tr. 47. She went on to explain that although Plaintiff has been diagnosed with anxiety and depression and is being treated with medications, she has no severe nonexertional impairments. Tr. 49. Dr. Rogers noted that Plaintiff never sought follow-up treatment for her mental condition, and that her primary care physician indicated in a January 25, 2011 mental questionnaire that she is not being treated for a mental condition and that she has no more than minimal mental limitations. Id.

Plaintiff testified that she lives at home with her husband, who is also unemployed, and her daughter, who completes high school courses from home. Tr. 50. She explained that her daily routine involves making breakfast every morning as well as completing other household chores, but that she must take her time because her legs hurt and her hands are numb. Tr. 52. In addition, she is capable of driving to the store. Id. She can pick up, but not carry, grocery items.

Tr. 53.  Plaintiff went on to testify that she can stand for thirty minutes, but that throughout the day she sits more than she stands, and that she must alternate sitting and standing because her legs hurt.  Tr. 55.

When asked by the ALJ whether her treatment provided relief, Plaintiff responded that she felt better for about an hour or two after she took her medication.  Tr. 56.  She testified that she believes the numbness in her legs prevents her from working, explaining that she was prescribed a cane because she has difficulty walking.  Tr. 58.  In addition, she testified that she is dizzy on a daily basis, has problems balancing when she stands up, suffers from headaches, and loses her vision when her blood pressure increases.  Tr. 59-60.  She sleeps little because of her pain, and she requires assistance from her daughter to shower and dress.  Tr. 62.  Because of her ailments, including her dizziness and trouble balancing, as well as the pain and numbness in her legs, feet, and toes, she requires constant use of her cane.  Tr. 60.

The ALJ posed the following hypothetical to the vocational expert:

> I'd like you to assume an individual who alleges disability at age 43 ... [who is] currently 43 ... [and has an] [e]ighth grade education.  No past relevant work history ....  For this first hypothetical, [she can] lift and carry 20 [pounds] occasionally, 10 frequently; occasional posturals: stoop, kneel, crouch, crawl; stand and walk six [hours]; and sit eight [hours], no limits on sitting but that she would require positional changes; and no more than 30 minutes on her feet, as she testified hereto today; and ... no climbing of ladders, ropes, or scaffolds.  From a nonexertional perspective ... no severe impairments for this [hypothetical].

Tr. 65.  Ms. Johnson opined that based on this hypothetical Plaintiff would be able to perform light unskilled work, including, for example, work as a game attendant, a cleaner and polisher, a garment bagger, and a ticket seller.  Tr. 66.  She testified as to the availability of these positions in the Texas and national economy.  Id.  Furthermore, she explained that the jobs could be performed by an individual who either occasionally or always uses a cane while walking.  Tr. 66,

68.

### C. The ALJ's Decision.

On April 1, 2011, the ALJ issued an unfavorable decision, concluding that Plaintiff has not engaged in substantial gainful activity since December 23, 2009, the date she applied for social security benefits. Tr. 20, 22. He found that she suffered from the severe impairments of diabetes mellitus type II, hypertension, obesity, high cholesterol, and arthritis. Id.; 20 C.F.R. § 416.971, et seq. However, he determined that Plaintiff's mental impairments of depression and anxiety were non-severe, based on Dr. Rogers' testimony, as well as a consideration of the four broad functional areas set out in the disability regulations for evaluating mental disorders and pursuant to § 12.00C of the Listing of Impairments, 20 C.F.R., Pt. 404, Subpt. P, App. 1. Tr. 23.

The ALJ went on to find that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). Tr. 23. This finding was based on the opinion of Dr. Decherd as well as the medical consultation performed by Dr. Rodriguez. Id.

The ALJ next found that Plaintiff had the residual functional capacity ("RFC") to perform light work within the meaning of 20 C.F.R. § 416.967(b). Specifically, he found that she could lift or carry twenty pounds occasionally and ten pounds frequently; that she could sit, stand or walk six hours out of an eight-hour workday with normal breaks, although he noted that she may need to alternate standing and sitting. Tr. 24. He precluded her from climbing ladders, ropes, or scaffolds, and from working around unprotected heights. Id. In making this determination, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms ... [her] statements concerning

7

the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [his] residual functional capacity assessment." Tr. 27. In particular, he explained, Plaintiff is "somewhat limited" by her multiple impairments, but these impairments "do not fully compromise [her] ability to function independently, effectively and adequately on a sustained basis." Id. This finding was based on the testimony of Dr. Decherd, Dr. Rogers, as well as the consultation by Dr. Rodriguez, to which he gave great weight. Id.

Next, the ALJ determined that Plaintiff has no past relevant work pursuant to 20 C.F.R. § 416.965; that she was a younger individual pursuant to 20 C.F.R. § 416.963 when she filed her application; that she has a limited education but is able to communicate in English pursuant to 20 C.F.R. § 416.964; and that transferability of job skills pursuant to 20 C.F.R. § 416.968 is not an issue because she has no past relevant work. Tr. 28.

Finally, the ALJ concluded that upon consideration of Plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform." Id. This finding was based on the vocational expert's testimony that Plaintiff could work as a games attendant, with 8,900 jobs in Texas and 236,000 jobs in the nation; as a cleaner and polisher, with 8,700 jobs in Texas and 200,000 jobs in the nation; as a garment bagger, with 5,980 jobs in Texas and 200,000 jobs in the nation, and as a ticket seller, with 9,000 jobs in Texas and 285,000 jobs in the nation. Id. Moreover, the ALJ found that Plaintiff could perform this work to the extent her additional limitations would otherwise limit her ability to perform light, unskilled work, based on the vocational expert's testimony that Plaintiff could perform these jobs even with consistent use of a cane while walking. Id. Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at the time of her application. Tr. 29.

## III. LEGAL STANDARDS

**A.      Social Security Act Disability Benefits Requirements.**

The same law and regulations govern whether an individual is considered disabled and therefore entitled to benefits under either the disability insurance benefits or the supplemental security income benefits provisions of the Social Security Act. Haywood v. Sullivan, 888 F.2d 1463, 1467 (5th Cir. 1989) (per curiam) (citations omitted). Specifically, the Social Security Act establishes that every individual who is insured for disability insurance benefits, has not attained the set retirement age, has filed an application for disability benefits, and is under a disability is entitled to receive disability benefits. 42 U.S.C. § 423(a)(1).

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act further provides that a claimant is not disabled if that person can perform jobs available in the national economy:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

**B.      Social Security Administration Regulations And Rulings.**

To determine if an individual suffers from a disability, as defined by the Social Security Act, the Commissioner has promulgated regulations containing a five-step sequential process to be used by the Social Security Administration. 20 C.F.R. §§ 404.1520, 416.920. A disability finding at any point in the five-step sequential process is conclusive and ends the analysis. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990) (citation omitted).

A claimant bears the burden of proof on the first four steps. Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citation omitted). The claimant must prove that: (1) he is not presently engaged in substantial gainful activity; (2) he suffers from an impairment or impairments that are severe; and that either (3) the impairment meets or equals an impairment listed in the appendix to the regulations; or (4) due to the claimant's RFC, the impairment prevents the claimant from doing any past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Bowling, 36 F.3d at 435; Villa, 895 F.2d at 1022.

The Fifth Circuit has held that "[t]he first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities." Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000) (citations omitted). The Commissioner may find that a claimant's impairment fails to meet the significant limitation requirement of step two "only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Id. at 391 (citation omitted).

Step three requires a claimant to prove that any of his impairments meet one or more of the impairments listed in the regulations, which include both physical and mental impairments.

20 C.F.R. Pt. 404, Subpt. P, App. 1. The criteria for determining the severity of the listed mental impairments include whether there is marked interference with activities of daily living, social functioning, concentration, persistence, or pace, and repeated episodes of decompensation. Id. at Pt. A § 12.00(C). The regulation defines "episodes of decompensation" as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." Id. at Pt. A § 12.00(C)(4). The claimant must present evidence that the impairment is a long-term problem rather than a temporary set-back, but "does not have to show a 12 month period of impairment unmarred by any symptom-free interval." Singletary v. Bowen, 798 F.2d 818, 821 (5th Cir. 1986) (citations omitted).

Pursuant to the fourth step, a claimant who is unable to show that his impairment meets one of the listed impairments must show that he is unable to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The claimant's RFC is taken into consideration to determine whether his impairments may cause physical and mental limitations that affect his ability to work. 20 C.F.R. §§ 404.1545, 416.945. The RFC is the most a claimant can do despite any limitations caused by an impairment. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). All relevant evidence in the record, including medical and non-medical evidence, is taken into consideration by the Commissioner when making a determination of a claimant's RFC. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The Commissioner must consider all of a claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical and non-medical evidence in the record. Social Security Ruling ("SSR") 96-7p, 1996

WL 374186, at *1 (S.S.A. July 2, 1996). "[T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Id. at *2. When a claimant's statements concerning symptoms and their associated limitations "are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." Id.

The adjudicator's discussion of a claimant's RFC must thoroughly discuss and analyze the objective medical and other evidence in relation to the symptoms. SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). This discussion must include a resolution of any inconsistencies in the record, address a logical explanation of effects of the alleged symptoms on the individual's ability to work, contain a determination of why symptom-related functional limitations can or cannot be reasonably accepted as consistent with medical or non-medical evidence, and address any medical opinions contained in the record. Id.

If the claimant is able to meet his burden under the first four elements, the burden shifts to the Commissioner for the fifth. Bowling, 36 F.3d at 435. The fifth step requires the Commissioner to determine, based on the claimant's RFC, age, education, and work experience, if the claimant can make an adjustment to other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the claimant is disabled. Id.

**C.      Judicial Review Of The Commissioner's Decision.**

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards.

See Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); accord Carey, 230 F.3d at 135. The Fifth Circuit has described this burden as more than a scintilla, but less than a preponderance. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995) (citations omitted). A finding of "no substantial evidence" occurs "only where there is a conspicuous absence of credible choices or no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam) (citation omitted).

If the Commissioner's findings are supported by substantial evidence, the Court must defer to the Commissioner and affirm the findings. See Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002) (citation omitted). In applying the substantial evidence standard, courts scrutinize the record to determine whether such evidence is present. They do not, however, re-weigh the evidence, try the issues de novo, or substitute their judgment for that of the Commissioner. Id.; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted). Factual conflicts that exist in the record are for the Commissioner and not the Court to resolve. Masterson, 309 F.3d at 272. It is incumbent upon the Court to look at the evidence as a whole and take into account the following factors: "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history." Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam) (citation omitted).

## IV. ANALYSIS

### A. Plaintiff's Cross-Motion For Summary Judgment Is Granted.

Once the Appeals Council denied Plaintiff's request for review on August 1, 2012, Tr. 4, the ALJ's decision became the Commissioner's final decision. See Sims v. Apfel, 530 U.S. 103, 107 (2000) ("if ... the Council denies the request for review, the ALJ's opinion becomes the final decision") (citing 20 C.F.R. §§ 404.900(a)(4)-(5), 404.955, 404.981, 422.210(a)). Plaintiff challenges the Commissioner's decision on the basis that the ALJ erred in finding that she retains the ability to perform work existing in significant numbers in the national economy. (D.E. 19, at 3-5).

Specifically, Plaintiff argues that the vocational expert's testimony regarding her ability to perform certain occupations conflicts with the requirements for those positions set out by the Dictionary of Occupational Titles ("DOT"). In turn, the ALJ erred by failing to inquire into and provide a reasonable explanation regarding this conflict pursuant to Social Security Ruling 00-4p. In particular, Plaintiff points to the fact that Ms. Johnson testified that she could perform the duties of a game attendant, washer and polisher, garment bagger, and ticket seller while using a cane, based on her conclusion that Plaintiff would be required to work while seated or, if necessary, could walk with her cane in one hand and carry objects in her other hand. However, Ms. Johnson failed to address whether her cane would affect her ability to perform those occupations to the extent they would require the ability to stand in a single location and handle objects with two hands. Accordingly, Plaintiff contends that the ALJ erred in relying on this testimony "without the clarification of how and when Plaintiff requires the use of her hand-held assistive device." (D.E. 19, at 7).

In response, Defendant argues that Plaintiff did not identify a conflict between Ms.

Johnson's testimony and the DOT, arguing that the record reflects that the vocational expert's determinations were based on her expertise and supported by an explanation.

The ALJ "has an affirmative responsibility to ask about any possible conflict between that ... evidence [from the vocational expert] and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4 (S.S.A. Dec. 4, 2000). As the Fifth Circuit has explained, "a vocational expert's erroneous characterization of the exertional level or skills required to perform a particular job calls into question both the probative value and reliability of the expert's testimony." Carey, 230 F.3d at 147. In addition, a conflict between an ALJ's finding regarding a claimant's RFC and the vocational expert's testimony regarding a claimant's ability to perform certain jobs with inconsistent skill requirements "may require remand for further exploration." Id. However, remand is only warranted if the ALJ's error is not harmless. Audler v. Astrue, 501 F.3d 446, 448-49 (5th Cir. 2007). To this end, a "claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'" Carey, 230 F.3d at 142 (quoting Kane v. Heckler, 731 F.2d 1216, 1220 (5th Cir. 1984)). To satisfy this burden a claimant need not show unequivocally that the ALJ would have reached a different decision; rather, she must establish only that the result *might* have changed. Id.

At the hearing, Ms. Johnson testified that Plaintiff could work as a game attendant, a cleaner and polisher, a garment bagger, and a ticket seller. See DOT, §§ 342.667-014; 709.687-010; 920.687-018; 211.467-030. When asked whether Plaintiff could perform those jobs if she was required to use a cane consistently in an eight hour work day, Ms. Johnson replied that she could. Tr. 68. She went on to explain that all four jobs involved primarily sitting in place, and that while a game attendant and garment bagger may have to walk, those jobs could be

performed with a cane.  Id.  Based on this testimony, the ALJ found that although Plaintiff's "ability to perform all or substantially all of the requirements of [light work] has been impeded by additional limitations"–namely, her use of a cane–significant jobs exist in the national economy that Plaintiff could still perform.

In relying on Ms. Johnson's testimony, the ALJ failed to address the limitations Plaintiff would encounter if she required constant use of a cane as well as the ability to stand while handling objects using both hands.  The occupations suggested by the vocational expert would potentially require such maneuvering.  For example, the duties listed for a game attendant would require Plaintiff to "perform[] minor repairs on game machines ... [r]emove coin acceptor mechanism of machines, using key, and observe[] [the broken] mechanism to detect causes of malfunctions ... [then] [r]emove[] obstructions, reposition[] mechanism" and test for repairs.  DOT § 342.667-014.  It is possible that these duties would require use of both hands while standing.  In addition, as a cleaner and polisher, Plaintiff would be required to clean and polish various articles, and engage in a significant amount of reaching and handling.  DOT § 709.687-010.  These duties possibly require the use of two hands while standing.  If Plaintiff worked as a garment bagger, she would be required to "[c]over garments or household articles with plastic or paper bags" by hanging garments on a stand and covering them with a bag; pulling plastic from a roll and sliding it over the garment; or hanging the garment in a machine that would then cover it with plastic.  DOT § 920.687-018.  In addition, she would be required to hang bagged articles on a rack, and remove and replace boxes from below a bagging machine.  DOT § 920.687-018.  It is difficult to imagine how these duties could be performed without the use of two hands while standing.  Finally, if Plaintiff worked as a ticket seller, it is possible that she would be required to

stand while carrying out the ticket handling and processing duties. DOT § 211.467-030.

In sum, all the occupations suggested by the vocational expert could potentially require standing while simultaneously handling objects using two hands. If this were the case, these occupations could not reasonably be performed by a person requiring constant use of a cane while standing. See 20 C.F.R., Part 404, Subpt. P, App. 1, § 1.00(J)(4) ("The requirement to use a hand-held assistive device may also impact [the claimant's] functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling."); SSR 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983) ("Many unskilled light jobs are performed primarily in one location, with the ability to stand more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects ...."); SSR 96-9P, 1996 WL 374185, at *6 (S.S.A. July 2, 1996) (use of a cane may impact ability to perform even sedentary work).[3] The ALJ did not recognize this conflict at the hearing as required by SSR 00-4p, and, as a result, neither the ALJ nor the vocational expert resolved it through any "reasonable explanation."

Based on a careful review of the record, the ALJ's failure to identify and resolve the apparent conflict between Ms. Johnson's testimony and the DOT job requirements was not a harmless error. It is possible that upon further exploration of the issue, a vocational expert would be unable to explain the conflict or suggest other occupations appropriate for Plaintiff's RFC in light of her additional limitations. If this were the case, the ALJ could potentially find

---

[3] Defendant contends that to the extent Plaintiff argues that an individual who requires a cane cannot perform light work pursuant to SSR 83-10 and SSR 96-9, her argument is unfounded because the purpose of these SSRs is to allow the ALJ to rely on a vocational expert in cases in which an individual's occupational job base is limited due to use of an assistive device. This argument fails to account for the fact that Ms. Johnson did not explain Plaintiff's ability–or lack thereof–to handle objects using two hands while standing.

that Plaintiff is entitled to disability benefits. Accordingly, reversal and remand is appropriate for further development of the issue. See Dukes-Adroin v. Astrue, No. H-10-426, 2011 WL 3273067, at *14-15 (S.D. Tex. July 28, 2011) (unpublished) (failure to explain conflict was not harmless error because, if error was corrected, it could "result in the award of disability benefits," because, "[f]or example, if the VE was unable to provide any further other work in the economy that aligns with the DOT, the ALJ could determine that [the claimant's] impairments warrant disability payments"); Montez v. Astrue, No. V-09-56, 2011 WL 13698, at *3-4 (S.D. Tex. Jan. 4, 2011) (unpublished) (unexplained conflict between vocational expert's testimony and DOT was not harmless error because further exploration of error may have resulted in a finding that claimant was disabled).

**B.     Defendant's Cross-Motion For Summary Judgment Is Denied.**

Defendant seeks summary judgment in its favor on the basis that the Commissioner's finding that Plaintiff is not disabled was supported by substantial evidence. (D.E. 17, at 1). However, because the ALJ relied on testimony by the vocational expert regarding Plaintiff's ability to perform certain occupations which conflicted with the DOT requirements without identifying and articulating a reasonable explanation for the conflict, Defendant is not entitled to summary judgment.

**V.  CONCLUSION**

For the reasons stated herein, Plaintiff's cross-motion for summary judgment, (D.E. 18), is granted, and Defendant's cross-motion for summary judgment, (D.E. 16), is denied. It is therefore ORDERED that the Commissioner's finding be reversed and remanded for further exploration regarding the conflict between the vocational expert's testimony and the DOT

requirements.

    ORDERED this 5th day of April 2013.

                                                   _____
                                                   BRIAN L. OWSLEY
                                                   UNITED STATES MAGISTRATE JUDGE